# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ANDREW ROLEY,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 18-cv-07537-BLF<br><br>**ORDER DENYING MOTION TO DISMISS; LIFTING DISCOVERY STAY**<br><br>[Re: ECF 24] |

Before the Court is Defendant Google LLC's ("Google") motion to dismiss Plaintiff Andrew Roley's ("Roley") First Amended Complaint in this consumer class action case. Mot., ECF 24. The Court held a hearing on the motion on April 17, 2019. For the reasons stated on the record and as discussed below, Google's motion is DENIED.

## I. BACKGROUND[1]

In early 2015, Google created its "Local Guides" program to improve its Google Maps and Google Earth products. First Am. Compl. ("FAC") ¶¶ 1–3, ECF 18. Individuals who sign up to be local guides share photographs, comments, reviews, and the like about various establishments and locations in their communities, which benefits Google through increased page views and advertising revenue. FAC ¶ 3. In return for these benefits and to encourage enrollment in and participation in the program, Google offers local guides various benefits for their participation. FAC ¶ 4. One such benefit Google offered was a free terabyte of data storage for those local guides who achieved "Level 4 status" in the program. FAC ¶ 5.

On April 4, 2016, Roley, who had previously uploaded pictures to Google, received an

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

email from Google inviting him to join the Local Guides program. FAC ¶ 14. Specifically, the email provided, in part:

> Get rewards for the photos you've shared.
>
> When you become a Local Guide, you earn points for your photos and other contributions to Google Maps. These points can unlock cool benefits like
>
> - 1TB of Google Drive storage
> - Invitations to exclusive events
> - Early access to new Google products
> - Local Guides badge
>
> You've already earned points with your photos. Why not join our community of explorers today?
>
> GET STARTED

FAC ¶ 15. Relying on the perceived promise of a terabyte of free data storage, Roley joined the Local Guides Program and thereafter received an email acknowledging his enrollment. FAC ¶ 16.

In order to enroll, Roley had to agree to the program's rules—the Local Guides Program Terms and Conditions ("Terms").[2] *See* Slabin Decl. ISO Mot. ¶¶ 2–4, ECF 24-1; Slabin Decl., Ex. A, ECF 24-2. The Terms state that "[b]y signing up to be a member of the Local Guides Program . . . you agree to be bound" by the Terms. *Id.*, Ex. B, ECF 24-3. As is relevant here, the Terms purport to give Google wide discretion with respect to providing benefits to local guides. Specifically, the Terms state the following: (1) "Level requirements and descriptions are subject to change, at Google's sole discretion;" (2) "Benefits are offered at the discretion of Google and its affiliates;" and (3) "Benefits are subject to change." *Id.*

---

[2] Google requests the Court take judicial notice of the Local Guides sign-up page and the Terms. *See* Mot. at 13–16. Plaintiff opposes this request. Opp. at 21–22, ECF 32. The request is GRANTED. As to the Terms, Plaintiff specifically incorporates them by reference into the FAC. *See* FAC ¶ 89; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). As to the sign-up page, the Court takes notice of the appearance of the sign-up page, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Craigslist, Inc. v. DealerCMO, Inc.*, No. 16-CV-01451-VC, 2017 WL 6334142, at *3 n.3 (N.D. Cal. Apr. 11, 2017).

2

Throughout the next several months, Roley uploaded photos, business information, and other content to Google as part of the Local Guides program. FAC ¶ 17. During this time, Google sent several emails to Roley, who started as a Level 3 local guide, encouraging him to continue to post photos and reviews through Local Guides and, at least on one occasion, to "[l]evel up now and get more exclusive benefits." FAC ¶¶ 18–24. On July 7, 2016, Google emailed Roley stating that it would be "adjust[ing] [its] Level 4 benefit to 100 GB of free Google Drive storage," but that "Local Guides who reach Level 4 in the next 2 weeks can still unlock the original offer of 1TB of free Drive storage." FAC ¶ 23. On July 14, 2016, within the two-week time frame Google provided, Roley achieved Level 4 status, and Google notified him that he could redeem his Google Drive storage. FAC ¶ 26. Roley alleges that Google believes that at the time Roley claimed his free storage, Google informed him that his free storage would last only two years, but Roley alleges this is not true. FAC ¶¶ 27–28.

Two years later, in April 2018, Google notified Roley that his free Drive storage was expiring and that he would have to begin paying monthly for his terabyte of storage. FAC ¶ 30. Roley was surprised to learn that his free storage was ending because none of the offers or information he had received relating to the terabyte of storage ever included a time limitation. FAC ¶¶ 32–34. Roley alleges that through these actions Google "convert[ed] the offer of a 'free terabyte' of data to a service that cost $10/month." FAC ¶ 50. Roley was then forced to either delete some of his data or pay $10/month to continue using the terabyte of storage. FAC ¶¶ 35–37. He ultimately was shut out of some Google services until he deleted some of his data. FAC ¶ 37.

Roley alleges that no reasonable consumer would have understood that the offer of free storage was time-limited to two years. FAC ¶¶ 7, 50. And he alleges that Google intentionally failed to disclose this time limit (and thus misrepresented the benefit) in an effort to induce Roley and members of the putative class to sign up for Local Guides to the benefit of Google. FAC ¶¶ 7–8. Based on these alleged actions, Roley brings the following claims against Google: (1) unfair business practices, in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) breach of contract; (3) fraud; (4) conversion; and (5) violations of

3

the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* FAC ¶¶ 45–99.

The breach of contract claim is premised on the allegation that Google "promised Plaintiff and Class members a free terabyte of data storage if they achieved 'Level 4' status as a Local Guide" in exchange for Roley's and the class's performance of certain services for Google, like uploading photos and reviews. FAC ¶ 61. Roley alleges that he "accepted the terms of the contract through performance." FAC ¶ 62. The fraud claim is based on Google's "misrepresentation of a material fact and/or a material and misleading omission to Plaintiff" by which Google intended to deceive average consumers into believing that the storage would last indefinitely, all the while knowing that the free storage would end after two years. FAC ¶¶ 68–74. Plaintiff brings his claims on behalf of a putative class of individuals "residing in the United States who attained 'Level 4' as a Google Local Guide after having been offered one free terabyte of Google Drive storage space without a time limitation in the offer, and who claimed their terabyte of data storage space, but whose free use of the terabyte was terminated after two years of having been given the terabyte." FAC ¶¶ 38–43.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

Google moves to dismiss all of Roley's claims. The Court discusses each claim in turn by category, first discussing the breach of contract claim and then the remaining four claims.

#### A. Breach of Contract

Roley alleges that he entered into a unilateral contract with Google. Read in the light most favorable to Roley, Roley alleges that Google's emails to Roley beginning in April 2016 and continuing through July 7, 2016 constituted a binding offer for a free terabyte of storage if Roley reached Level 4 status. FAC ¶¶ 23, 61. Roley alleges he accepted this offer by fully performing—that is, by reaching Level 4 status. FAC ¶ 62; *see also* Opp. at 4–8 & n.2.

Recognizing that Roley's allegations are somewhat imprecise with respect to whether the April 2016 email alone or in tandem with the subsequent emails through July 7, 2016 constitutes the alleged binding offer, *see* Mot. at 7–8 n.3, Google argues that the April email was not a binding offer because (1) it did not include essential terms necessary to tell the recipients how they could accept the offer through performance, including how many points were needed to earn the

5

terabyte benefit; (2) recipients were required to take additional steps before they could start performing as local guides, including clicking "Get Started" and enrolling in the program; and (3) the Terms, to which Roley agreed, expressly allowed Google to change the free storage benefit. *See* Mot. at 7–10. Indeed, Google argues that the Terms, not the "advertising" email, constitutes the relevant contract here. *See id.* at 9–10.

The Court agrees with Roley that on the facts alleged, he states a valid claim for breach of contract.

The Ninth Circuit decision in *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012), relied on by both parties, is instructive. In *Sateriale*, the Ninth Circuit held that the cigarette company R.J. Reynolds Tobacco Company ("RJR") made an offer for customers to enter into a unilateral contract through its Camel Cash customer loyalty program. *See id.* at 785–89. RJR represented to consumers on product packaging, in the media, and on the certificates themselves, that consumers could collect Camel Cash certificates and exchange them for merchandise according to the terms provided in a separate catalog. *Id.* at 783. To participate, consumers had to fill out and submit separate registration forms to RJR, after which RJR sent them an enrollment number and a catalog containing the redeemable merchandise. Some of the catalogs stated that RJR could terminate the program at any time without notice. *Id.* In October 2006, RJR announced the program would end in March 2007. Despite this representation, RJR ceased accepting certificates immediately, and consumers were left with unredeemable certificates before March 2007. The plaintiffs sued for breach of contract, promissory estoppel, and UCL and CLRA violations.

In their breach of contract claim, the plaintiffs did not dispute that RJR had the right to terminate the program in March 2007, but they claimed that RJR had breached its contract by failing to perform between October 2006 and March 2007. *Id.* at 784. The Ninth Circuit agreed. The court first held RJR's representations on the certificates represented a binding offer to enter into a unilateral contract. *Id.* at 785–88. The court noted that the common law rule that advertisements generally do not constitute offers to sell "includes an exception for offers of a reward, including offers of a reward for the redemption of coupons." *Id.* at 786. The key question

6

was simply "whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed." *Id.* at 787.

Looking to the "totality of the circumstances," the Ninth Circuit concluded the offer was binding because of "the repeated use of the word 'offer' in the [certificates]; the absence of any language disclaiming the intent to be bound; the inclusion of specific restrictions in the [certificates] . . . the formal enrollment process, through which consumers submitted registration forms and RJR issued enrollment numbers; and the substantial reliance expected from consumers," *id.* at 787–88, including that "consumers were expected to purchase Camel cigarettes and accumulate Camel Cash certificates for a period of weeks, months or even years" before redeeming merchandise, *id.* at 788 n.3. Based on these facts, the Ninth Circuit held that the "alleged offer invited the performance of specific acts (saving [certificates] and redeeming them for rewards in accordance with the catalog) without further communication, and leaving nothing for negotiation." *Id.* at 788. Importantly, the court rejected RJR's argument that "the offer left aspects of RJR's performance to RJR's discretion," such as how many certificates would be required to purchased merchandise and what items could be purchased, because the plaintiffs had not alleged that "these were essential terms." *Id.* Similarly, the court rejected RJR's argument that the offer was too indefinite to enforce as a contract. *Id.* at 789–90.

Finally, the court rejected RJR's argument that the contract lacked mutuality of obligation because RJR had "an unrestricted right to terminate the Camel Cash program at will, and without notice." *Id.* at 790. The court first held that mutuality of obligation does not apply to unilateral contracts. *Id.* at 791. But it also recognized that a "reservation of an unrestricted right to terminate could have precluded RJR's communications from constituting an offer" and that "an enforceable termination clause that gives a promisor an unrestricted power to terminate a contract at any time, without notice, renders the promise illusory and unenforceable, at least so long as the purported contract remains wholly executory." *Id.* But because plaintiff had alleged that only some of the catalogs reserved the right to terminate at will and because RJR "waived the right to

7

terminate without notice" when it announced it would maintain the program until March 2007, the court held that dismissal was not warranted. *Id.* at 791–92.

Comparing the facts of *Sateriale* to this case, the Court concludes that, at the motion to dismiss stage, the offer here was a binding offer that Roley accepted through full performance. As an initial matter, the Court takes as true Roley's allegation that Google's offer was for storage for an indefinite period of time and that Google changed the benefit to a two-year time-limited benefit *after* Roley fully performed (*i.e.*, reached Level 4). On the facts alleged, the question of whether the offer was for storage that would last forever or that was implicitly time-limited is a question of fact not appropriate for resolution on a motion to dismiss.

Here, Google offered Roley a free terabyte of storage in exchange for his earning points through the Local Guides program. FAC ¶¶ 15, 61–62. Once Roley enrolled in the program, Google continued to encourage his performance, specifically encouraging him toward the benefit of one terabyte of storage. FAC ¶¶ 18–24. Indeed, on July 7, 2016, Google promised Roley that if he reached Level 4 status within two weeks, he would receive one terabyte of free storage. FAC ¶ 23. Roley fully performed in accordance with Google's terms. As such, the "totality of the circumstances" demonstrate that Google "in clear and positive terms, promised to render performance"—provision of a terabyte of storage—"in exchange for something requested by the advertiser"—achievement of Level 4 status—and that Roley "reasonably might have concluded that by acting in accordance with the request a contract would be formed." *Sateriale*, 697 F.3d at 787. As in *Sateriale*, that Roley had to enroll in the program does not render the offer non-binding. And contrary to Google's argument, at least as of the July 7 email, the essential terms of the agreement were set—Google promised the terabyte of data in exchange for Level 4 status if reached within two weeks. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 272 (2001), *as modified* (Sept. 12, 2001) ("[C]ertain advertisements have been held to constitute offers where they invite the performance of a specific act without further communication and leave nothing for negotiation.").

For these reasons, Google's reliance on *Frezza v. Google Inc.*, No. 12-CV-0237, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013), is misplaced. There, the court rejected the plaintiffs'

8

argument that Google had made a binding offer of a free 30-day trial period for a new program because (1) the alleged offer directed the consumer to a signup page "for more details," (2) the sign-up page required the consumer to provide credit card information, which was not made clear in the advertisement, (3) and the plaintiffs alleged the contract was formed at the time of enrollment, but they had not included the terms and conditions presented during the enrollment process. *Id.* at *3–*4. Moreover, the terms and conditions expressly provided for the fee that the plaintiffs were challenging. *Id.* at *1. None of these facts is present here. The April 4 email directed Roley to "start now" but did not indicate that Roley would be required to take additional steps (such as providing credit card information) beyond mere enrollment in the program (as in *Sateriale*). Likewise, the Terms here do not expressly provide for a time-limited storage benefit, whereas the *Frezza* terms expressly provided for the fee that the plaintiffs believed the contract did not contemplate. Moreover, though the FAC is not entirely clear as to when the binding offer was made (be it April or July 7, 2016, or otherwise), Roley clearly does not allege that the contract was formed at the time of enrollment.

Roley's agreement to the Terms does not change this conclusion. Google is correct that just like RJR's termination rights included in the catalogs in *Sateriale*, the Terms can be considered part of the offer and contract here. But these provisions do not help Google because Roley alleges that Google promised as late as July 7, 2016 to provide the terabyte of storage for the next two weeks. As in *Sateriale*, where RJR promised to keep the rewards program open until March 2007 but ended it early, Google did not live up to this promise. Moreover, by this point Roley had fully performed—he had reached Level 4 status. Though the court in *Sateriale* recognized that a clause giving the "promisor an unrestricted power to terminate a contract at any time, without notice, renders the promise illusory and unenforceable," it noted that this applies where "the contract remains wholly executory." Here, because Roley had fully performed, the contract was no longer wholly executory. *See Contract*, Black's Law Dictionary (10th ed. 2014) (defining executory contract as "contract that remains wholly unperformed or for which there remains something still to be done on both sides").

Perhaps most importantly, unlike *Sateriale*, where some of the catalogs stated that RJR had

9

the discretion to terminate the program "without notice," the Terms here do not give Google such blanket discretion. They say only that Google has the discretion to change level requirements and offer benefits; they do not say it can terminate the offer of benefits without any notice whatsoever to individuals who have fully performed. Absent an express provision to the contrary, the Court cannot read the contract to give Google such broad discretion. Indeed, reading such broad discretion into the contract could render the contract illusory. If Google could simply choose not to confer promised benefits after full performance by the consumer, it would have no duty to perform under the contract. "A construction making a contract illusory is not favored and [courts] will not accept it if there is a reasonable alternative." *LaRussa v. NMTC, Inc.*, No. CV 05-751-TUC-FRZ, 2007 WL 9724933, at *3 (D. Ariz. Mar. 30, 2007) (quoting *J.C. Millett Co. v. Distillers Distibuting Corp.*, 258 F.2d 139, 142 (9th Cir. 1958)); *see also Sateriale*, 697 F.3d at 790 (citation omitted) ("[I]f one party has greatly benefited by part performance or if one party has relied extensively on the agreement, the court should go to great lengths to find a construction of the agreement that will salvage it."). At this stage, on these facts, the Court interprets Google's discretion to be limited at least by the implied duty of good faith and fair dealing. *See LaRussa*, 2007 WL 9724933, at *3 (listing cases in which courts applied the duty of good faith and fair dealing to avoid rendering a contract illusory); *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 708 (2013). Especially in light of the fact that Google allegedly continued to promise that Roley could earn the terabyte by performing, there is a question of fact as to how to interpret the discretionary provision of the Terms.

Thus, on the facts as alleged in the FAC, Roley has successfully alleged the existence of a binding offer from Google that Roley fully accepted through performance, such that Google allegedly breached by failing to satisfy said offer.

### B. Fraud, Conversion, UCL, and CLRA

As to the remaining claims, Google argues that because the Terms gave Google discretion to change the benefits, Roley's claims fail as a matter of law. *See* Mot. at 10–13. It does not argue that the FAC fails to meet the particularity requirements of Federal Rule of Civil Procedure 9(b). The Court discusses each claim in turn, considering the UCL and CLRA claims together.

### 1. Fraud

Google argues that Roley's fraud claim cannot stand because Roley's belief that he would receive free storage for life was unreasonable because the Terms allowed Google to change the benefits at its discretion and none of the marketing materials indicated that the benefit would last indefinitely. *See* Mot. at 10–11. Put another way, Google argues that Roley could not have justifiably relied on Google's disclosures, as would be necessary to sustain a claim for fraud. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012).

The Court concludes that Google asks it to make factual determinations inappropriate at the motion to dismiss stage. *See id.* ("[W]hether reliance [on a misrepresentation] was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion." (citation omitted) (second alteration in original)). To determine as a matter of law that Roley did not justifiably rely on Google's representations, the Court would have to find that Roley's reliance in "light of his own intelligence and information was manifestly unreasonable." *Id.* To establish manifest unreasonableness, "[i]t must appear that [plaintiff] put faith in representations that were preposterous or shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth." *Id.* (alterations in original).

On the facts alleged, the Court cannot hold that Roley's reliance was manifestly unreasonable. Roley alleges that Google never told him before he finished performing that the free storage would be time-limited. This fact alone distinguishes most of the cases Google cites, wherein the contracts at issue included unambiguous provisions that allowed the defendants to act in the ways the plaintiffs subsequently challenged. For example, in *Davis*, 691 F.3d at 1163, the court dismissed the plaintiff's claim that the defendants fraudulently concealed the existence of an annual fee in its advertising and marketing because the fee was disclosed in terms to which plaintiff agreed. *See also Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-4000, 2013 WL 57861, at *10–*11 (N.D. Cal. Jan. 3, 2013) (same). In *Guerard v. CNA Financial Corp.*, the plaintiffs brought multiple claims against an insurer for its failure to provide benefits to the insured for at-home health services provided to the insured by her children. No. 09-CV-1801,

11

2009 WL 3152055, at *4–*5 (N.D. Cal. Sept. 23, 2009). The court dismissed plaintiffs' fraud claim based on these allegations because the insurance policy "unambiguous[ly]" excluded insurance coverage for services rendered by family members. *Id.*; *see also Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1111 (1987) (dismissing fraud claim because insurance policy unambiguously excluded coverage for the types of action at issue). In this case, Google did not expressly provide that the terabyte of data would be limited to two years.

Nevertheless, Google argues that the contract *did* expressly allow it to act as it did because the Terms give Google wide discretion to change the benefits. However, as discussed above, the contract's discretionary provisions are ambiguous. For this reason, the decision in *Baird v. Samsung Electronics America, Inc.*, No. 17-CV-06407-JSW, 2018 WL 4191542 (N.D. Cal. July 20, 2018), is distinguishable. In that case, the plaintiffs claimed in part that the defendant had defrauded consumers by misrepresenting that its TVs would have unlimited access to YouTube, though the TVs did not have such access. *Id.* at *5–*6. The court held that the plaintiffs could not have justifiably relied on any of defendant's representations because disclaimers in the TV manuals stated that "services provided are subject to change . . . *without notice*." *Id.* at *6 (emphasis added). Here, as discussed above, Google did not unambiguously reserve the right to change the benefits without any notice to Roley.

Thus, as alleged, the FAC presents a question of fact as to whether Roley justifiably relied on Google's representations because the scope of Google's discretion under the Terms was ambiguous. As such, Google's motion to dismiss Roley's fraud claim on this ground is DENIED.

**2. Conversion**

As with the breach of contract claim, Google argues that Roley's conversion claim cannot stand because the Terms gave Google the right to revoke benefits at will. *See* Mot. at 11–12. This amounts to an argument that the allegations do not establish that Roley "had a right to ownership or possession" of the terabyte of data storage after two years. *Appling v. Wachovia Mortg.*, FSB, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010). Because as discussed above, the scope of Google's discretion to modify the benefits is a question of fact, the Court cannot say that Roley consented to Google's actions, and thus cannot dismiss the conversion claim on this ground. Roley alleges that

12

under the parties' contract, read in his favor, he had a right to the terabyte of data storage indefinitely and Google converted the storage by forcing Roley to pay for it.

For these reasons, Google's motion to dismiss Roley's conversion claim is DENIED.

### 3. UCL and CLRA

Finally, Google seeks to dismiss Roley's UCL and CLRA claims in part because they rely on Roley's fraud claim and related allegations, and Google believes it has demonstrated that Roley could not have justifiably relied on Google's representations. *See* Mot. at 12–13.

Because the Court has held that Roley has plausibly alleged justifiable reliance and thus will not dismiss the fraud claim at this stage, Roley's UCL and CLRA claims survive as well. *See* Cal. Bus. & Prof. Code § 17200 (barring unfair competition including "fraudulent business act[s] or practice[s]"); *Sateriale*, 697 F.3d at 794 (allowing CLRA claims based on fraud theories if the plaintiff alleges "actual reliance on the misrepresentation"); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (discussing how UCL and CLRA claims can be supported by theories of fraud).

Thus, Google's motion to dismiss Roley's UCL and CLRA claims is DENIED.

## IV. ORDER

Based on the foregoing, Google's motion to dismiss Roley's FAC is DENIED. The temporary stay of discovery imposed at the case management conference is hereby LIFTED.

**IT IS SO ORDERED.**

Dated: April 23, 2019

_____
BETH LABSON FREEMAN
United States District Judge

13