1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

7

8

9

10

11

ANDREW ROLEY,

            Plaintiff,

    v.

GOOGLE LLC,

            Defendant.

Case No.  18-cv-07537-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF 105]

12

13

14

15

16

17

18

19

20

21

Plaintiff Andrew Roley received an email from Google advertising the availability of one terabyte of Google Drive storage. When Mr. Roley discovered that terabyte of storage was not free forever, he sued. Before the Court is Google's motion for summary judgment, which seeks to have this Court decide as a matter of law that the communications sent to Mr. Roley and other class members were not a unilateral contract and that Mr. Roley was not justified in relying on the email as a purported offer of free storage for life. *See* Mot., ECF 105. Mr. Roley opposes this motion. *See* Opp'n, ECF 110. The Court agrees with Google that, as a matter of law, there is no unilateral contract and GRANTS summary judgment on the class breach of contract and conversion claims. The Court DENIES summary judgment on the individual fraud claims.

22

23

## I.    BACKGROUND

24

### A.    Local Guides Program

25

26

27

28

In January 2015, Google created the "Local Guides" program to improve its Google Maps product, which allows users to search for locations and directions online. *See* Decl. of Christina Collada ("Collada Decl.") ¶¶ 3-4, ECF 81-9. To become a Local Guide, Google users had to agree to be bound by the operative Local Guides Program Terms and Conditions (the "Terms"), as well

United States District Court
Northern District of California

United States District Court
Northern District of California

1  as Google's Terms of Service. Collada Decl. ¶¶ 4-5.; *see also* Collada Decl., Ex. 2, Terms, at 1,

2  ECF 81-10. The Terms stated during the relevant time period for this case that: (1) "Level

3  requirements and descriptions are subject to change, at Google's sole discretion;" (2) "Benefits are

4  offered at the discretion of Google and its affiliates;" and (3)"Benefits are subject to change."

5  Collada Decl. ¶ 6; Terms, at 1-2. The Terms also refers to various other webpages, including the

6  Local Guides Help Center.  *See* Decl. of Laura Slabin ("Slabin Decl.") ¶ 5, ECF 24-1.; Slabin

7  Decl., Ex. B, Archived Terms Page, ECF 24-3.

8          Google users can contribute content to Google Maps—for example, by writing a review or

9  uploading a photo of a location—and Google users who sign up to become Local Guides can earn

10  points for their contributions to Google Maps. Collada Decl. ¶¶ 3-4. Google users who contributed

11  to Google Maps prior to signing up for the Local Guides program receive points for their prior

12  contributions upon signing up for the program. Collada Decl. ¶ 7. The points that Local Guides

13  earn correspond to different "Levels," with higher "Levels" requiring more points. Collada Decl. ¶

14  3. Based on these Levels, Local Guides can earn certain rewards. Collada Decl. ¶ 3. In November

15  2015, "Google expanded the Local Guides program by (1) adding new ways for Local Guides to

16  earn points, (2) increasing the number of Levels that Local Guides could attain, and (3) providing

17  new rewards to Local Guides who reached various Levels." Collada Decl. ¶ 3. For example, Local

18  Guides could now earn points for five types of contributions: "writing reviews, uploading photos,

19  answering questions about a location, correcting information about a location, or adding a new

20  location on Maps." Collada Decl. ¶ 8. As part of this expansion, Google offered one terabyte of

21  storage on Google Drive, Google's cloud-based storage service, as a reward for Local Guides who

22  reached Level 4 (the "1 TB Benefit"). Collada Decl. ¶ 9. The Terms do not reference the 1 TB

23  Benefit, or any of the other rewards Google offered its Local Guides. *See generally* Terms. The

24  Terms do provide a hyperlink to the Enrollment, Help Center, and Benefits pages. *See* Terms, at 1.

25  Google stopped offering the 1 TB Benefit to Local Guides around July 7, 2016. Collada Decl. ¶

26  10.

27          Following the expansion of the Local Guides program, Google encouraged Maps users

28  who were uploading content to join the program. Beginning in 2016, Google sent an email to users

1  who were not Local Guides after the user uploaded a photo to Google Maps (the "Photo Impact

2  Email"). Collada Decl. ¶ 14; Chen Decl., Ex. 1, Photo Impact Email, ECF 110-2. Mr. Roley

3  received the Photo Impact Email on April 4, 2016. *See* Photo Impact Email. The Photo Impact

4  Email congratulated Mr. Roley on his photos being a "big hit" and invited him to join the Local

5  Guides program. Photo Impact Email, at 1-2. Specifically, the Photo Impact Email provided, in

6  relevant part:



18  Photo Impact Email, at 2. Clicking "Get Started" took a user to the Enrollment Page, where a user

19  had to agree to the program rules (the Terms) and to receive emails from the Local Guides

20  program. Clicking "sign up" completed enrollment in the program.



United States District Court
Northern District of California

1    Ex. A, Enrollment Page, ECF 24-2.

2          Mr. Roley joined the Local Guides program after receiving the Photo Impact Email in

3    April 2016. Chen Decl., Ex. 15, Depo. of Andrew Roley at 125-26, ECF 72-5. According to Mr.

4    Roley, "it wasn't clear exactly" what he had to do to receive the 1 TB Benefit based on the Photo

5    Impact Email. Dep. of Andrew Roley ("Roley Dep.") 140:18-23, ECF 105-2. Mr. Roley also

6    acknowledged that the email did not tell him how many points he needed in order to obtain the 1

7    TB Benefit or what level he needed to reach, details that were important to him. Roley Dep. 142:7-

8    15. Mr. Roley also acknowledged that he did not think he was guaranteed to receive the benefits

9    listed in the Photo Impact Email: "I believed that the details about the points would give me more

10   information about what would allow me to receive these items. Specifically, the most obvious one

11   was how many points for 1 terabyte of Google Drive storage was a question that remained and

12   was not a guarantee yet." *Id.* 135:17-23. On July 14, 2016, Google emailed Mr. Roley to inform

13   him that he reached Level 4 and was eligible to receive the 1 TB Benefit. Chen Decl., Ex. 2, Level

14   4 Email, ECF 110-2.

15         All Local Guides were notified when they redeemed the 1 TB Benefit that it would end in

16   two years. Collada Decl. ¶¶ 47-49; Collada Decl., Ex. 24, Notice, ECF 81-10. Further, the Local

17   Guides Help Center, referenced and hyperlinked in the Terms, contained two references to the

18   two-year time limit. Collada Decl. ¶¶ 27-28; *see also* Collada Decl., Ex. 12-15, Help Center Pages,

19   ECF 81-10.

20         **B.      Procedural History**

21         Mr. Roley's operative First Amended Complaint asserts five claims for relief: (1) violation

22   of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (2) breach of

23   contract; (3) fraud; (4) conversion; and (5) violation of the Consumer Legal Remedies Act

24   ("CLRA") Cal. Civ. Code § 1750, et seq. *See* First Am. Compl. ("FAC") ¶¶ 45-99, ECF 18. On

25   July 20, 2020, the Court granted in part Mr. Roley's motion for class certification. *See* Order,

26   ("Class Cert. Order"), ECF 92. The Court certified class under Rule 23(b)(3) as to the breach of

27   contract and conversion claims. Class Cert. Order 23. The Court certified Mr. Roley's class

28   defined as: "All residents of the United States who received the Photo Impact Email and attained

4

1   Level 4 status as a Google Local Guide after November 12, 2015, and redeemed the benefit of 1

2   TB of Google Drive storage." *Id.* Mr. Roley is still pursuing the three fraud-based claims as an

3   individual.

4

5   **II.    LEGAL STANDARD**

6          "A party is entitled to summary judgment if the 'movant shows that there is no genuine

7   dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

8   *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.

9   56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law."

10  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is

11  "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the

12  nonmoving party. *Id.*

13         The party moving for summary judgment bears the initial burden of informing the Court of

14  the basis for the motion and identifying portions of the pleadings, depositions, answers to

15  interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

16  fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

17  must either produce evidence negating an essential element of the nonmoving party's claim or

18  defense or show that the nonmoving party does not have enough evidence of an essential element

19  to carry its ultimate burden of persuasion at trial.*" Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*

20  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, the

21  Court "does not assess credibility or weigh the evidence, but simply determines whether there is a

22  genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Where the moving

23  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

24  reasonable trier of fact could find other than for the moving party. *Celotex*, 477 U.S. at 325;

25  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

26         If the moving party meets its initial burden, the burden shifts to the nonmoving party to

27  produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the

28  nonmoving party does not produce evidence to show a genuine issue of material fact, the moving

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1     party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the

2     evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

3     nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of

4     evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary

5     judgment. *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D. Cal.

6     1995) (quoting *Anderson*, 477 U.S. at 252). "'Where the record taken as a whole could not lead a

7     rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *First Pac.*

8     *Networks*, 891 F. Supp. at 514 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

9     U.S. 574, 587 (1986)).

10

11    **III.    DISCUSSION**

12          The Court will first address Mr. Roley's class claims for breach of contract and conversion

13    before reaching his individual fraud-based claims.

14          **A.    Breach of Contract**

15          Google argues that the Photo Impact Email cannot, as a matter of law, be a unilateral

16    contract offer for free storage forever, and thus there can be no breach of contract claim. Mot. 9-

17    16. Google argues that there is no unilateral contract for several reasons: the Photo Impact Email

18    uses conditional language, it does not identify a "specific act" that a Local Guide must preform to

19    earn the 1 TB Benefit, the generalized descriptions of other rewards reinforce the fact that this is

20    not a unilateral contract, and Mr. Roley himself admitted in his deposition that the Email did not

21    make a contractual promise in clear and positive terms. *Id.*

22          Mr. Roley argues that there is a unilateral contract: Google invited performance in a clear

23    offer, and he and the other class members performed. Opp'n 7-14. At oral argument, Mr. Roley's

24    counsel attempted to clarify what constitutes the unilateral contract in a lengthy and detailed

25    discussion on the record. *See* Mot. for Summ. J. Hr'g Tr. ("MSJ Tr.") 24:3-26:21, 32:23-25,

26    45:14-18, ECF 111. Initially, Mr. Roley argued that the unilateral contact was made up of four

27    documents: the Photo Impact Email, the Enrollment Page, the Terms, and the Benefits Page,

28    which is hyperlinked in the Terms. *See* Chen Decl., Ex. 12, Benefits Page, ECF 110-2; *see also*

United States District Court
Northern District of California

1   MSJ Tr. 24:18-26:12; 26:18-21. However, Google correctly notes that this Court previously

2   warned Mr. Roley at oral argument for class certification that if the Benefits Page, via hyperlink

3   from the Terms, is part of the unilateral contract, then the Help Center, which is also hyperlinked

4   in the Terms and discloses the two-year limitation to the 1 TB Benefit, is necessarily incorporated

5   as well. *See* Mot. for Class Certification Hr'g Tr. 29:14-17, ECF 90 ("Well, let's be careful with

6   that because the terms and conditions link to the Help Page we showed here. So you can hop out

7   of the frying pan right into the fire on that one"). By the end of the hearing for this motion, Mr.

8   Roley had reversed himself regarding the Benefits Page and was arguing that it was a piece of

9   information that was separate from the contract itself. MSJ Tr. 45:14-18. At the end of the hearing,

10  Mr. Roley affirmed that he is arguing that the unilateral contract is the Photo Impact Email, the

11  Enrollment Page, and the Terms. MSJ Tr. 42:20-25.

12          The Court agrees with Google that there is no unilateral contract, so the breach of contract

13  claim must fail.

14          Under California law, a claim for breach of contract must include: "(1) the existence of a

15  contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage resulting

16  from the breach." *First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (Cal. Ct. App.

17  2001). "[A] unilateral contract involves the exchange of a promise for a performance." *Sateriale v.*

18  *R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012) (citing *Harris v. Time, Inc.*, 191

19  Cal. App. 3d 449 (Cal. Ct. App. 1987)). "The offer is accepted by rendering a performance rather

20  than providing a promise." *Sateriale*, 697 F.3d at 785. Advertisements, on the other hand, "are

21  uniformly regarded as mere preliminary invitations which create no power of acceptance in the

22  recipient." *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 539 (9th Cir. 1983);

23  *see also Konik v. Cable*, No. CV 07-763 SVW (RZX), 2009 WL 10681970, at *4 (C.D. Cal. Dec.

24  2, 2009) ("The general rule is that an advertisement, circular, price list, quotation or the like is not

25  an offer, even though the terms of suggested bargains may be stated in some detail.") (internal

26  quotation and citation omitted). "[A]dvertisements have been held to constitute offers where they

27  invite the performance of a specific act without further communication and leave nothing for

28  negotiation." *Sateriale*, 697 f.3d at 788 (quoting *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 272

United States District Court
Northern District of California

1   (2001)). "The operative question under California law, therefore, is simply 'whether the advertiser,

2   in clear and positive terms, promised to render performance in exchange for something requested

3   by the advertiser, and whether the recipient of the advertisement reasonably might have concluded

4   that by acting in accordance with the request a contract would be formed.'" *Sateriale*, 697 F.3d at

5   787 (quoting *Donovan*, 26 Cal. 4th at 272).

6        Google refers to the text of the Photo Impact Email and argues that it uses conditional

7   language that cannot be "clear and positive terms" and that it does not specify what "specific act"

8   is required to obtain the 1 TB Benefit. The Photo Impact Email states,

> When you become a Local Guide, you earn points and other contributions to Google Maps.
> These points *can* unlock cool benefits *like*
> -   1TB of Google Drive storage
> -   Invitations to exclusive events
> -   Early access to new Google products
> -   Local Guides Badge.
>     You've already earned points with your photos. Why not join our community of
>     explorers today?

15   Photo Impact Email, at 2 (emphasis added). The Email describes the benefits as possibilities in

16   generalized terms, not as guarantees. If the recipient of the email clicked the "Get Started" text,

17   they were taken to the Enrollment Page, which required an acceptance of the Terms to become a

18   Local Guide. Even Mr. Roley admits that a material contract term—the duration of the 1 TB

19   Benefit—is only "impliedly" in the Photo Impact Email.  FAC ¶ 69. As Google argues, the Photo

20   Impact Email does not contain any reference to the "specific act" a person must perform, as there

21   is no mention of needing to achieve the Level 4 Local Guide status in order to achieve the 1 TB

22   Benefit. The Court notes that Mr. Roley failed to appreciate this when describing the Photo Impact

23   Email in his opposition brief: "This form email offered 1 TB of free Drive storage in exchange *for*

24   *achieving Level 4 Local Guide status*." Opp'n 3 (emphasis added). In actuality, the Photo Impact

25   Email did not request this "specific act" of achieving Level 4 Local Guide status in "clear and

26   definite terms." The Enrollment Page and the Terms do not mention the 1 TB Benefit at all and

27   make no mention of the need to achieve Level 4 Local Guide status. Mr. Roley emphasizes that

28   achieving Level 4 Local Guide status is the performance Google requested for acceptance of this

United States District Court
Northern District of California

1     unilateral contract: "Plaintiff has not alleged Local Guides would automatically qualify for the 1 TB

2     merely by *enrolling* as a Local Guide, but that they would automatically qualify for the 1 TB *if they*

3     *performed and achieved Level 4 status*." Opp'n 11 (emphasis in original). Accordingly, the Photo

4     Impact Email cannot be a unilateral contract on its own or in conjunction with the Enrollment

5     Page and Terms because they are missing the "specific act" (achieving Level 4 Local Guide

6     status) that Mr. Roley alleges is necessary to accept the unilateral contract.

7             California courts have also demanded much clearer and more positive terms, along with

8     specific acts, to find an offer that forms the basis of a unilateral contract in an advertisement or

9     promotional material. In *Donovan*, the court found an offer in a newspaper advertisement for a

10    particular car for sale at a stated price, which included a detailed description of the car, the vehicle

11    identification number, and that the advertisement expired on April 27, 1997. 26 Cal. 4th at 267.

12    Federal courts interpreting California law have also emphasized the necessity of an advertiser

13    making clear what "specific act" constitutes a performance capable of accepting the offer. In

14    *Harris v. Wells Fargo Bank N.A.*, the Court emphasized that defendant's agent told plaintiffs

15    "exactly what would constitute 'acceptance' of the offer: submit the loan modification application

16    by August 10, 2015." No. EDCV 16-645 JGB (KKx), 2017 WL 10605197, at *9 (C.D. Cal. Feb.

17    7, 2017).

18            Other courts in the Ninth Circuit have required "clear and positive terms," along with a

19    "specific act," to find a unilateral contract. For example, in *Kearney v. Equilon Enterprises, LLC*,

20    65 F. Supp. 3d 1033 (D. Or. 2014), the defendant displayed an advertisement at Shell-brand

21    service stations that stated the following: "buy 10 gallons of fuel, get a voucher for a free lift

22    ticket!" *Id.* at 1035. The Court found that "Defendant, in clear and positive terms, promised to

23    render performance in exchange for the purchase of ten gallons of fuel. Namely, if one purchases

24    ten gallons of fuel at a Shell Station participating in the "Ski Free" promotion, then the purchaser

25    is rewarded with a voucher for a free lift ticket." *Id.* at 1039.

26            There is a degree of difference in the clear and positive terms in these advertisements as

27    compared to the Photo Impact Email. Mr. Roley has not cited any case, with generalized language

28    similar to the Photo Impact Email, Enrollment Page, and Terms, where a court has found an offer

9

1    that forms the basis for a unilateral contract.

2           In addition to needing "clear and positive" terms and a specific request from the offeror, it

3    must also be true that the offeree "reasonably might have concluded that by acting in accordance

4    with the request a contract would be formed.'" *Sateriale*, 697 F.3d at 787 (quoting *Donovan*, 26

5    Cal. 4th at 272). Here, Mr. Roley's own testimony establishes that it was unclear what, exactly,

6    recipients of the Photo Impact Email had to do to receive the 1 TB Benefit. Roley Dep. 140:18-23.

7    Mr. Roley also acknowledged that the email did not tell him how many points he needed in order

8    to obtain the 1 TB Benefit or what level he needed to reach, details that were important to him. *Id.*

9    142:7-15. Mr. Roley also acknowledged that he did not think he was guaranteed to receive the

10   benefits listed in the Photo Impact Email: "I believed that the details about the points would give

11   me more information about what would allow me to receive these items. Specifically, the most

12   obvious one was how many points for 1 terabyte of Google Drive storage was a question that

13   remained and was not a guarantee yet." *Id.* 135:17-23. Mr. Roley's testimony contradicts his

14   argument that "there was utterly no lack of clarity about the 'specific act' required of Class members:

15   add content to Google Maps." Opp'n 12. Simply adding content to Google Maps provided no

16   guarantee of a lifelong 1 TB Benefit, as Mr. Roley acknowledges.

17          Mr. Roley's testimony starkly contrasts with the testimony in *Reynolds v. Philip Morris*

18   *U.S.A., Inc.*, No. 05cv1876 JAH (BLM), 2007 WL 9724373, at *5 (S.D. Cal. June 5, 2007), *rev'd*

19   *on other grounds and remanded sub nom. Reynolds v. Philip Morris USA*, Inc., 332 F. App'x 397

20   (9th Cir. 2009). In finding factual disputes that prevented summary judgment on the unilateral

21   contract claim, the court found that the plaintiff "disputes Defendant's contentions regarding the

22   lack of clear and definite terms of the incentive program, and instead asserts that she had

23   knowledge of clear and specific terms offered by Defendant.). *Reynolds*, 2007 WL 9724373, at *5.

24   "Plaintiff lists the acts as consisting of 'the purchase of Marlboro cigarettes, the clipping of

25   Marlboro Miles certificates, the saving of Marlboro Miles certificates and the eventual mailing of

26   a sufficient number of Marlboro Miles certificates for products offered by PM.'" *Id.* Here, Mr.

27   Roley, by his own admission, lacked knowledge of the (nonexistent) clear and specific terms

28   offered by Google.

Mr. Roley's argument relies heavily on *Sateriale*, specifically one line in the opinion: "The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances." *Sateriale*, 697 F.3d at 784 (quoting *Donovan*, 26 Cal. 4th at 271). The Court agrees that consideration of all of the surrounding circumstances is required, but that review does not change the outcome here: the Photo Impact Email, the Enrollment Page, and the Terms are not a unilateral contract.

In *Sateriale*, the defendant cigarette manufacturer issued Camel Cash Certificates, ("C–Notes") that stated

> USE THIS NEW C–NOTE AND THE C–NOTES YOU'VE BEEN SAVING TO GET THE BEST GOODS CAMEL HAS TO OFFER. CALL 1–800–CAMEL CASH (1800–266–3522) for a free catalog. Offer restricted to smokers 21 years of age or older. Value 1/1000 of 1¢. Offer good only in the USA, and void where restricted or prohibited by law. Check catalog for expiration date. Limit 5 requests for a catalog per household

*Id.* at 783. Looking to the "totality of the circumstances," the Ninth Circuit concluded the offer was binding because of "the repeated use of the word 'offer' in the [certificates]; the absence of any language disclaiming the intent to be bound; the inclusion of specific restrictions in the [certificates] . . . the formal enrollment process, through which consumers submitted registration forms and RJR issued enrollment numbers; and the substantial reliance expected from consumers," *id.* at 787–88, including that "consumers were expected to purchase Camel cigarettes and accumulate Camel Cash certificates for a period of weeks, months or even years" before redeeming merchandise, *id.* at 788 n.3. Based on these facts, the Ninth Circuit held that the "alleged offer invited the performance of specific acts (saving [certificates] and redeeming them for rewards in accordance with the catalog) without further communication, and leaving nothing for negotiation." *Id.* at 788

As Google notes, the word "offer," which was given emphasis by the Ninth Circuit in *Sateriale*, is absent from the Photo Impact Email, the Enrollment Page, and the Terms. And *Sateriale* did not involve a plaintiff attempting to enforce a unilateral contract for a specific item—instead, the plaintiffs alleged that the defendant cigarette manufacture was obligated to provide

11

United States District Court
Northern District of California

1     some item, as detailed in the catalog, in exchange for the C–Notes. *Sateriale*, 697 F.3d at 788.

2     Therefore, the fact that "[t]he offer did not specify when future catalogs would be issued, what

3     rewards merchandise they would include, what quantities of merchandise would be available or

4     how many C–Notes would be required to exchange for particular items" was irrelevant because

5     "plaintiffs, however, do not allege that these were essential terms." *Id.* Mr. Roley's case is

6     different, as he is trying to enforce a unilateral contract for a specific item—the 1 TB Benefit for

7     life—but that exact term (specifically, the "for life" aspect) and the specific act required to receive

8     this item (achieve Level 4 Local Guides status) are absent from the alleged unilateral contract,

9     rendering it unenforceable.

10          Ninth Circuit and California law are clear: for an advertisement to constitute an offer that

11    forms the basis for a unilateral contract, the advertiser must, "in clear and positive terms,

12    promise[] to render performance in exchange for something requested by the advertiser," and the

13    recipient of the advertisement must have been able to conclude that "by acting in accordance with

14    the request a contract would be formed." *Sateriale*, 697 F.3d at 787 (quoting *Donovan*, 26 Cal. 4th

15    at 272). As a matter of law, the Photo Impact Email, Enrollment Page, and Terms cannot

16    constitute the "clear and positive terms" communicating the specific act Mr. Roley needed to

17    perform to accept the contract. The Photo Impact Email, Enrollment Page, and Terms never state

18    that Mr. Roley must achieve Level 4 Local Guide status to receive the 1 TB Benefit, and none of

19    the documents state the 1 TB Benefit lasts indefinitely. Because the Court finds that no unilateral

20    contract exists, Mr. Roley's arguments regarding Google's alleged pronouncement of a time limit

21    only after performance was rendered, Opp'n 13-14, and alleged altering of the terms of the

22    contract after performance, Opp'n 16-18, are inapposite here. There is no unilateral contract and

23    thus no terms to alter or time limit to change.

24          Accordingly, the Court GRANTS Google's motion for summary judgment on the

25    unilateral contract claim.

26          **B.     Conversion**

27          The elements of a conversion claim under California law are: "plaintiff's ownership or right

28    to possession of the property at the time of the conversion; the defendant's conversion by a wrongful

1    act or disposition of property rights; and damages." *Spates v. Dameron Hosp. Ass'n.*, 114 Cal. App.

2    4th 208, 221 (Cal. Ct. App. 2003). Both parties agree that the conversion claim is derivative of the

3    breach of contract claim. Mot. 20, Reply 1 n.1, ECF 112; Opp'n 7. Since the breach of contract

4    claim fails, there can be no claim for conversion, and summary judgment is GRANTED on this

5    claim.

6              **C.      Individual Fraud-Based Claims**

7              Mr. Roley brings three fraud-based claims on an individual basis: fraud and violations of

8    the CLRA and UCL. Google argues these claims must be dismissed because all three claims

9    require Mr. Roley to demonstrate "justifiable reliance," which he cannot do. Mot. 20-23. Mr.

10   Roley argues that there are material facts in dispute that prevent summary judgment on these

11   claims. Opp'n 19-24. The Court agrees with Mr. Roley that there are factual disputes that prevent

12   the Court from ruling as a matter of law that there was no justifiable reliance.

13             To state a claim for common law fraud under California law, a plaintiff must plead facts

14   alleging: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) the

15   speaker's knowledge of falsity (scienter); (3) the intent to defraud or to induce reliance; (4)

16   justifiable reliance; and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638

17   (1996). Thus, fraud requires both actual and reasonable reliance. *See Hoffman v. 162 North Wolfe

18   LLC*, 228 Cal. App. 4th 1178, 1193-94 (Cal. Ct. App. 2014).

19             The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair,

20   deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Unlike common-

21   law fraud claims that focus on the victim's reliance or damages, the UCL focuses on the

22   perpetrator's behavior: 'to state a claim under either the UCL . . . it is necessary only to show that

23   members of the public are likely to be deceived.'" *Berger v. Home Depot USA, Inc.*, 741 F.3d

24   1061, 1068 (9th Cir. 2014) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)),

25   *abrogated by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). "Actual falsehood, the

26   perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false

27   statements—each of which are elements of common-law fraud claims—are not required to show a

28   violation of California's UCL." *Berger*, 741 F.3d at 1068.

13

United States District Court
Northern District of California

1    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

2  practices undertaken by any person in a transaction intended to result or which results in the sale

3  or lease of goods or services." Cal. Civ. Code § 1770(a). Claims under the CLRA and UCL are

4  governed by an objective, "reasonable consumer" test. *Broomfield v. Craft Brew Alliance*, No. 17-cv-

5  01027-BLF, 2018 WL 4952519, at *10 (N.D. Cal. Sept. 25, 2018) (citing *Williams v. Gerber Prods.*

6  *Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Each statute allows Plaintiffs to establish the required

7  elements of reliance, causation, and damages by proving that Defendants made what a reasonable

8  person would consider a material misrepresentation." *Broomfield*, 2018 WL 4952519, at *10 (citations

9  omitted).

10    Google argues for summary judgment on the individual fraud claims only on the basis of

11  justifiable reliance and not the absence of other necessary elements, such as misrepresentation.

12  Specifically, Google argues that Mr. Roley cannot prove justifiable reliance as a matter of law

13  because: his interpretation of the Photo Impact Email offering the 1 TB Benefit forever is

14  contradicted by the Terms, which state that the 1 TB Benefit was offered at "the discretion of

15  Google" and "subject to change;" the Help Center, which is directly linked in the Terms, expressly

16  disclosed that the Drive Benefit would only last two years; and under the circumstances, it was

17  unreasonable for Mr. Roley to rely on the Photo Impact Email without any independent inquiry or

18  investigation. Mot. 21-23. Mr. Roley argues that there was no mention of a time limit on the 1 TB

19  Benefit in the Photo Impact Email or Terms, and a jury must determine whether Mr. Roley's

20  reliance was "reasonable under the circumstances." Opp'n 21. Mr. Roley argues that he had no

21  reason to believe further investigation into the time duration of the 1 TB Benefit was necessary.

22  Opp'n 22. The Court bears in mind that "[w]hether reliance [on a misrepresentation] was

23  reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts

24  permit reasonable minds to come to just one conclusion." *Davis v. HSBC Bank Nevada, N.A.*, 691

25  F.3d 1152, 1163 (9th Cir. 2012) (alterations in original) (quoting *Broberg v. Guardian Life Ins.*

26  *Co. of Am.*, 171 Cal. App. 4th 912, 921 (Cal. Ct. App. 2009)); *see also Mullins v. Premier Nutrition*

27  *Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) ("California law generally reserves for the jury the

28  question of whether a reasonable consumer is likely to be deceived."). Accordingly, the Court finds

14

that it cannot, as a matter of law, find that reasonable minds could only come to one conclusion as to

whether it was unreasonable for Mr. Roley to rely on the Photo Impact Email as the basis for his belief

that the 1 TB Benefit would last indefinitely. Accordingly, Summary Judgment is DENIED on these

claims.

## IV.    ORDER

   For the foregoing reasons, IT IS HEREBY ORDERED that Google's motion for summary

judgment is:

   1. GRANTED as to the breach of contract claim;

   2. GRANTED as to the conversion claim;

   3. DENIED as to the fraud claim;

   4. DENIED as to the UCL claim;

   5. DENIED as to the CLRA claim.

Dated: March 22, 2021

_____

BETH LABSON FREEMAN
United States District Judge